

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CITY OF GLADSTONE, an Oregon )
municipal corporation, )
                                            )
               Plaintiff, )    Case No. 00-1438-KI
                                            )
   vs.                      )    OPINION AND ORDER
                                            )
NORTHLAND CASUALTY COMPANY, )
a foreign corporation; KEN LEAHY )
CONSTRUCTION, INC., an Oregon )
corporation; KEN LEAHY; and DONNA )
LEAHY, )
                                            )
              Defendants. )

     Beth Skillern
     Donald R. Stark
     John R. Osburn
     Bullivant Houser Bailey, P. C.
     300 Pioneer Tower
     888 S. W. Fifth Avenue
     Portland, Oregon 97204-2089

Page 1 - OPINION AND ORDER

John H. Hammond, Jr.
Beery Elsner & Hammond
1750 S. W. Harbor Way, Suite 380
Portland, Oregon 97201

    Attorneys for Plaintiff

Robert E. Maloney, Jr.
Charles F. Hudson
Lane Powell P. C.
601 S. W. Second Avenue, Suite 2100
Portland, Oregon 97204-3158

Andrew R. Gardner
Stoel Rives, LLP
900 SW Fifth Avenue, Suite 2600
Portland, Oregon 97204

    Attorneys for Defendants

KING, Judge:

Plaintiff City of Gladstone (the "City") seeks a declaration that the insurance policy issued by defendant Northland Casualty Company ("Northland") provides insurance coverage for the $410,000 settlement amount paid in Ken Leahy Construction, Inc., et al. v. The City of Gladstone, et al., Civil Case No. 98-1247-JE (D. Or.) (the "Leahy lawsuit").[1] Northland counterclaims for a declaration that the insurance policy excludes coverage for the Leahy settlement, and seeks reimbursement of that amount. Before me are the City's motion for summary judgment (#48) and Northland's motion for summary judgment (#43). I deny the City's motion for summary judgment and grant Northland's motion for summary judgment.

---

[1] Pursuant to a stipulation between the parties, after the City submitted its motion for summary judgment, the City amended its complaint to eliminate the claims for breach of fiduciary duty and breach of duties of good faith and fair dealing.

Page 2 - OPINION AND ORDER

## BACKGROUND

I.   The Leahys' Property and Permitting Process

In February 1998, the Leahys purchased a nearly 11-acre parcel of land in the city and received from the seller a valid assignment of rights in a grading permit. The City had approved the grading proposal on or about March 28, 1997, finding that the permit was consistent with the parcel's zoning, and recognizing that the grading proposed would require blasting, excavating, and the removal of approximately 300,000 cubic yards of basalt rock. Clackamas County had also determined that all requirements for final issuance of the permit were satisfied, on or about April 4, 1997. (At that time, pursuant to a cooperative intergovernmental agreement, the City transmitted grading permits to Clackamas County for technical code compliance review.)

On May 12, 1998, the City amended Title 17, § 17.80 of its Municipal Code to require design review approval before any excavation or grading. Around that time, the City also held a series of hearings in connection with design review for the proposed development of the Leahys' property as a shopping center, and members of the public raised concerns about the grading of the property.

On July 10, 1998, upon payment of the required fee, the County issued the grading permit to the Leahys. Thereafter, the City Council formally denied the shopping center's development application, expressing concerns about the proposed grading. At the request of the City, in a letter dated July 29, 1998, the County informed the Leahys that it was withdrawing approval of the grading permit.

II. The Leahys' Lawsuit and the City's Condemnation Action

In August 1998, the Leahys filed suit against the City. Northland defended the case under a reservation of rights. Following a three-day bench trial ending on March 11, 1999, Judge Jelderks ruled that the City could not lawfully prevent the Leahys from obtaining the grading permit, and permanently enjoined the City from revoking or rescinding the decision to issue the permit. Ken Leahy Construction, Inc. v. City of Gladstone, Findings of Fact and Conclusions of Law, CV 98-1247-JE (D. Or. March 19, 1999), Hudson Amended Aff., Ex. 2 ("Findings").

The City then filed an action to condemn the real property affected by the grading permit, and Judge Jelderks suspended the injunction.

After the City initiated condemnation proceedings, the Leahys filed a Supplemental Amended Complaint in the action before Judge Jelderks ("Amended Complaint"). They alleged violations of procedural due process and claimed a temporary and permanent taking of the grading permit in violation of the Fifth Amendment to the U.S. Constitution. The Leahys included an alternative claim for relief alleging temporary and permanent taking of the grading permit in violation of the Oregon Constitution.

The Leahys sought a total of $1.5 million, which they described as payment for their "inability to excavate, crush and sell the rock as authorized by the Grading Permit," and alternatively as the "value of the property rights" the City took. Hudson Amended Aff., Ex. 4, ¶¶ 40, 45 ("Ex. 4"). The Leahys explained their reason for the Amended Complaint as follows: "As a result of the condemnation proceedings, plaintiffs are unable to exercise their vested rights under the Grading Permit," and "[t]he state condemnation will not . . . provide plaintiffs any compensation for the damage done to them as a result of the City defendants' illegal course of

Page 4 - OPINION AND ORDER

conduct and violation of plaintiffs' procedural and substantive rights. Nor will the state condemnation action compensate plaintiffs for the temporary and/or permanent taking of the Grading Permit by the City." Id. ¶¶ 34, 35.

The City condemned the property on April 16, 1999, paying $3.1 million in compensation for the property. A letter to the district court explained that "[t]he agreed just compensation is for the fee interest in the real property condemned and includes royalty value of the rock in place on the property as part of that interest. The settlement does not include either profits or losses from the processing and sale of the rock. Nor does it compromise any claims made for damages incurred prior to the filing of the condemnation complaint." Hudson Amended Aff., Ex. 5. Accordingly, the condemnation of the property did not resolve all of the claims raised by the Leahys' Amended Complaint.

On cross-motions for summary judgment, Judge Jelderks concluded that "defendants deprived the Leahys of a vested property interest without due process, and effected an inverse condemnation of the property in question when they revoked the grading permit on July 29, 1998." Ken Leahy Construction, Inc. v. City of Gladstone, Order, CV 98-1247-JE (D. Or. May 2, 2000); Hudson Amended Aff., Ex. 3 at 3 ("Order"). The resulting judgment included damages of $199,503.18, representing interest on the value of the property from the time of the inverse condemnation in July 29, 1998 until the formal condemnation was effected on April 16, 1999. In addition, the Leahys were awarded $305,039.60 in attorney fees, and $14,901.69 in costs.

After the award of attorney fees, Northland wrote to the City, stating:

> It is our position, and we believe it was the judges [sic] finding, that all of the underlying conduct in this cases [sic] arises from or "depends upon" a taking of property, eminent domain, condemnation, inverse condemnation or adverse

possession. In addition, we believe that the City reasonably should have
anticipated that plaintiffs would suffer damages as the result of the revocation of
the grading permit. Therefore, we believe the policy excludes coverage for the
judgment entered because the damages arose out of condemnation and/or were
expected or intended.

Plaintiff's Concise Statement of Material Facts, Ex. F at 2.

Both parties appealed Judge Jelderks' Order. The Ninth Circuit remanded the damage action to the district court for clarification, stating as follows:

> We REMAND for clarification and identification of the precise ground or grounds
> on which the district court granted summary judgment. We note that Leahy's
> lawsuit invoked both state and federal law bases for recovery and articulated
> different theories under each. We note also that the district court's order of May
> 22, 2000 does not provide this Court with adequate information about the legal
> basis for its decision assessing liability to decide this appeal. Moreover, if the
> district court granted summary judgment on federal takings grounds, the court
> shall reconsider its decision in light of Tahoe-Sierra Preservation Council v.
> Tahoe Regional Planning Agency, 122 S.Ct. 1465 (2002).
>
> The sua sponte award of damages on summary judgment is ordered VACATED.
> On remand, the district court shall permit the parties to brief the issue of damages
> before holding a hearing to determine the proper award. After making that
> determination, the district court shall reconsider whether attorney's fees are
> appropriate under 42 U.S.C. § 1988(b).
>
> The parties shall bear their own costs of this appeal, and this panel shall retain
> jurisdiction over any subsequent appeals of this matter.
>
> VACATED in part and REMANDED.

Leahy Construction, et al. v. City of Gladstone, et al., 52 Fed. Apx. 10, 2002 WL 31740698 (9th Cir. 2002), Hudson Amended Aff., Ex. 9 at 4. Before Judge Jelderks could clarify his Order, Northland settled the Leahy lawsuit by payment of $410,000 to the Leahys. Northland reserved its right to reimbursement upon this Court's determination that Northland's policy does not provide coverage.

Page 6 - OPINION AND ORDER

III. The City's Insurance Policy with Northland

The pertinent terms of Northland's Oregon Public Entity Liability Coverage Form, PEL-42 (4/97) include the following provisions.

> SECTION I
> A.  Insuring Agreement
>     We will pay those sums that the insured becomes legally obligated to pay as damages because of:
>     * * *
>     2.  Any negligent act, error or omission; or
>     3.  "Personal injury," "advertising injury" or violation of civil rights which is caused by an offense,
>     which takes place during the policy period and to which this insurance applies.
>     Damages, if awarded, will include prevailing attorney fees.
>     * * *
>
> SECTION V – EXCLUSIONS
> A.  The following exclusions apply to all claims or "suits" made under this policy. This insurance does not apply to:
>     * * *
>     3.  Condemnation
>         Any damages based upon or arising out of eminent domain, condemnation, inverse condemnation or adverse possession.
>     * * *
>     5.  Expected or Intended Damage or Injury
>         Any damages expected or intended from the standpoint of an insured. This exclusion does not apply to:
>         a.  Use of force by insured public safety officers to protect persons or property (unless deemed to be a criminal act); or
>         b.  "Bodily injury" resulting from the use of reasonable force by an insured (other than public safety officers) to protect persons or property.

Plaintiff's Concise Statement of Material Fact, Ex. G at 2, 5.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The

initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

The question presented here is whether the settlement from the Leahy lawsuit is excluded from coverage as either "damages based upon or arising out of eminent domain, condemnation, inverse condemnation or adverse possession" or as damages "expected or intended from the perspective of the insured." The City also asserts it is entitled to summary judgment on the basis that the settlement should be covered as "negligence" or "violation of civil rights" under the coverage provision of the insurance policy.

As I acknowledged at oral argument, this is a difficult case and one that I am loathe to decide fully in favor of one party at the utter expense of the other party. Nevertheless, having no other choice, I proceed to resolve the contentions of the parties.

I.  Duty to Indemnify: Applicable Analysis

The parties disagree about how the court should determine whether the Leahy settlement is covered by the policy.

The City argues that the court should look at the allegations of the complaint, and "whether, if proved, those claims would be within the policy coverage." Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 3; see Ledford v. Gutoski, 319 Or. 397,

404-05, 877 P.2d 80 (1994); American Hardware Ins. Group v. West One Auto. Group, Inc., 167 Or. App. 244, 247, 2 P.3d 413 (2000) (internal citation omitted) ("If the complaint alleges facts which, if proved, would impose liability covered by the policy, the insurer must defend. Because [the insured] settled [the plaintiff's] claims [in the underlying action], the duty to indemnify is determined by the same principles"); Northwest Pump & Equipment Co. v. American States Ins. Co., 144 Or. App. 222, 230, 925 P.2d 1241 (1996). The City asserts that this framework is appropriate where the insurer has settled the case on behalf of the insured.

Northland questions the City's reliance on Ledford and American Hardware for two reasons. First, both are cases in which the insured settled the claims presented, after the insurer refused to defend, and *before a trial*. Here, Northland accepted tender of the defense and settled the claims (with the agreement of the insured), *after* the case had been tried. Northland refers to both Judge Jelderks' Findings, issued prior to the filing of the condemnation action, as well as the Order. Second, Northland points out that the Ninth Circuit vacated only part of Judge Jelderks' Order, leaving alone the underlying determination of liability.

Ultimately, however, Northland argues that the court may look to either the Leahys' allegations or to Judge Jelderks' determination of liability. Northland contends that either approach will lead the court to the conclusion that the settlement amount is not covered by the policy.

I recognize this case presents facts different from the cases cited by the City, inasmuch as Judge Jelderks issued his Findings and presented an Order prior to the parties' settlement. However, first, I question the applicability of the Findings to this decision since they were issued before the Leahys submitted their Amended Complaint and were based solely on Oregon

statutory law permitting the enforcement of an administrative decision. Secondly, with respect to Judge Jelderks' Order, while presenting a decision on liability, the court is unclear as to the basis for its finding of liability, a fact recognized by the Ninth Circuit's remand. Since the parties settled prior to any clarification of the Order, it is purely speculative on what basis the court would have assigned liability to the City–whether under the procedural due process clause or the takings clause.

Accordingly, I determine the existence of Northland's duty to indemnify based on whether the Amended Complaint alleges facts which, if proved, would impose liability on the City that is covered by the insurance policy.

II.     Exclusion of Coverage: Damages Based Upon or Arising Out of Inverse Condemnation

Under Oregon law, the interpretation of the insurance policy is a matter of law. Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992). The court must determine the intention of the parties by examining the terms and conditions of the policy. Id. If the policy contains undefined terms, the plain meaning of the terms should be used. If there is more than one plausible interpretation of the disputed term, the term must be examined considering the context in which it is used, and the policy as a whole. Id. at 470. If two plausible interpretations are reasonable after employing this analysis, the policy must be construed against the drafter. Id. at 470-71.

Northland's policy excludes "damages based upon or arising out of eminent domain, condemnation, inverse condemnation or adverse possession." Plaintiff's Concise Statement of Material Fact, Ex. G at 5. The City states without analysis that there is no plain meaning for "based upon or arising out of." Thus, the City urges the court to consider the context in which

Page 10 - OPINION AND ORDER

the terms are used. According to the City, the context requires the court to interpret the exclusion to mean "damages <u>awarded</u> for eminent domain, condemnation, inverse condemnation or adverse possession." Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 6. The City then contends that the exclusion cannot apply to damages awarded for a violation of procedural due process rights.[2] According to the City, the only plausible interpretation of the exclusion is that it applies to damages awarded for an inverse condemnation of real property, but not for a violation of due process alleged to have resulted from the denial of a grading permit. At a minimum, according to the City, there are "two competing plausible interpretations" and the language must be construed against the drafter. See Hoffman, 313 Or. at 469-70.

Northland responds that Oregon courts and a majority of courts elsewhere have already determined there is a plain meaning for "arising out of." These courts have found that "arising out of" exclusions are broadly construed to preclude coverage based upon the underlying source of the damage, regardless of the legal theory asserted. See, e.g. Farmers Ins. Group of Oregon v. Nelson, 78 Or. App. 213, 218, 715 P.2d 492 (1986) ("Coverage does not turn on the legal theory under which liability is asserted, but on the cause of injury" when construing the words "arise out of"). Indeed, "'[a]rising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with.'" Underwriters at Lloyd's of London v. Cordova Airlines, Inc., 283 F.2d 659, 664-65 (9th Cir. 1960) (citation omitted) (policy insuring aircraft in Alaska).

---

[2] This argument appears to assume that liability could not be assigned for inverse condemnation.

Page 11 - OPINION AND ORDER

I adopt the definition for "arising out of" advanced by Northland, and contained in Underwriters at Lloyd's of London.

A. The Allegations in the Leahys' Amended Complaint

Looking at the allegations in the Leahys' Amended Complaint, then, the question is whether the Leahys' damages arise out of inverse condemnation. In other words, do the Leahys complain about damages that "originate from," "have their origin in," "grow out of," "flow from," or are "incident to, or have a connection with" inverse condemnation?

The Leahys' Count One, although labeled "Procedural Due Process," asserts an injury for the City's "refusing . . . to issue a legally approved Grading Permit," for "revok[ing] a prior approved Grading Permit," for "refusing to issue the approved Grading Permit," for "unilaterally instructing the County to rescind plaintiffs' Grading Permit," for "denying plaintiffs any reasonable opportunity to exercise their legal rights under the approved Grading Permit," and for "ratifying defendants' prior illegal revocation of the Grading Permit." Ex. 4, ¶¶ 39 (A), (D), (E), (G), (H) and (I). Any process-related allegations are simply "incident to" the revocation of the grading permit. For instance, the following allegations have at their heart the revocation of the permit: "advising plaintiffs that additional administrative and legal review was necessary . . . when it was not," "requiring additional administrative review, not required by law, be conducted prior to issuing the approved Grading Permit," and "failing to give notice . . . that . . . the . . . development application . . . would be treated as a . . . revocation of[] the prior final decision approving plaintiffs' grading rights." Id. at ¶¶ 39 (B), (C), and (F).

Therefore, I find that the Leahys' damages arose from the City's revocation of the grading permit.

B.  Whether the Taking of a Grading Permit Constitutes Inverse Condemnation

The next question, pursuant to Ledford, American Hardware, and Northwest Pump & Equipment is whether the City could have been liable for inverse condemnation for revoking the Leahys' grading permit.

"Inverse condemnation" is defined to mean, "An action brought by a property owner for compensation from a governmental entity that has taken the owner's property without bringing formal condemnation proceedings." Black's Law Dictionary 287 (7th ed. 1999). Accordingly, if the City could be liable for revoking the permit under either the Fifth Amendment of the United States Constitution or, alternatively, under Article I, Section 18 of the Oregon Constitution, the policy exclusion will apply and Northland will have no duty to indemnify the City for the Leahy settlement.

Under the Fifth Amendment, a taking may occur when the government physically invades property, or when a regulation goes "too far" in prohibiting or limiting a private use. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). "A permanent [regulatory] deprivation of the entire area is a taking of 'the parcel as a whole,' whereas a temporary restriction that merely causes a diminution in value is not." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 332 (2002). Nevertheless, the Fifth Amendment applies to "partial takings as well as total takings." Id. at 332 n.27. Therefore, when a regulation does not result in a categorical taking, the court must engage in an *ad hoc* analysis using the *Penn Central* factors. Id. at 331. Pursuant to *Penn Central*, the court looks at "the economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered

with distinct investment-backed expectations"; and second, "the character of the governmental action." Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978).³

The City forges its arguments based on an incorrect reading of Tahoe-Sierra. First, it argues that the Leahys could not recover for the City's revocation of the grading permit because the taking of the grading permit did not constitute a total taking of the parcel. The City points out that it paid for the entire parcel in its condemnation proceeding, which must inherently have included the grading permit as one stick in the bundle. Furthermore, it appears to argue that even if it had not paid for the parcel, the Leahys "could never have recovered for a taking of a single, separate property right such as a grading permit." Plaintiff's Response to Defendant's Motion for Summary Judgment at 5.

As an initial point, although the City paid for the Leahy property, the condemnation settlement expressly recognized that damages arising from the temporary taking of the grading permit remained for resolution by the district court. In addition, the City misapprehends Tahoe-Sierra. It is true the Court reiterated that for purposes of determining whether a property owner has been deprived of all economically viable use of property, a court must look to the entire parcel. Tahoe Sierra, 535 U.S. at 331. However, if the court concludes that the regulation does not deprive the property of all economically viable use, the court must next consider the takings claim in light of the *Penn Central* factors. Id. Accordingly, the Leahys *could* have recovered for the temporary revocation of the grading permit if they satisfied the *Penn Central* factors.

---

³The Supreme Court recently held it is no longer relevant in the takings context whether a regulation substantially advances a legitimate state interest. Lingle v. Chevron U.S.A., Inc., 125 S. Ct. 2074, 2086 (2005).

Page 14 - OPINION AND ORDER

This leads to the City's second, but related, fundamental error. It argues that Tahoe-Sierra stands for the proposition that a mere procedural delay cannot constitute a temporary regulatory taking. In fact, the Court refused to adopt a categorical rule that all moratoriums, or procedural delays, can never rise to the level of a taking. Tahoe-Sierra, 535 U.S. at 321 n.16 ("Despite our clear refusal to hold that a moratorium never effects a taking, the Chief Justice accuses us of 'allowing the government to . . . take property without paying for it.' It may be true that under a *Penn Central* analysis petitioners' land was taken and compensation would be due. But petitioners failed to challenge the District Court's conclusion that there was no taking under *Penn Central*."). Instead, as I indicate above, the Court instructs, "[t]he starting point . . . [is] to ask whether there [i]s a total taking of the entire parcel; if not then *Penn Central* [i]s the proper framework." Tahoe-Sierra, 535 U.S. at 331.

Applying the cases above, then, the Leahys would have to prove that the City's revocation of the grading permit went "too far" in reducing the use of the land in order for the City to be liable for inverse condemnation. Since it would likely have been impossible for the Leahys to prove that the temporary revocation of the grading permit deprived the property of all economically viable use of the land, the Leahys would have been required instead to discuss the economic impact of the temporary revocation, their "distinct investment-backed expectations," and "the character of the governmental action" pursuant to *Penn Central*.

With respect to the first prong, courts have traditionally required a showing of severe economic deprivation. Rose Acre Farms, Inc. v. United States, 373 F.3d 1177, 1195 (Fed. Cir. 2004). Thus, the fact that the revocation was temporary would be relevant here. From July 29, 1998 until the district court's injunction in March 22, 1999, the Leahys were precluded from

Page 15 - OPINION AND ORDER

grading their property. Nevertheless, the allegations of the Amended Complaint provide that had the City not revoked the permit, the Leahys would have been able to excavate approximately 300,000 banked cubic yards of basalt rock. Ex.4, ¶ 17. The estimated value of this property right was $1.5 million. Id. at ¶ 45. Had the City not revoked the permit, the Leahys were prepared to proceed with the excavation, crushing and sale of the rock within six months. Id. at ¶ 30. Furthermore, the Leahys alleged that substantial grading of the property was necessary for its commercial development. Id. at ¶ 16. Thus, the Leahys allege facts that may be sufficient to establish severe economic deprivation at the hands of the City during this period of time.

Determining whether the property owner had investment-backed expectations "limit[s] takings recoveries to owners who [can] demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." Rose Acre Farms, 373 F.3d at 1190 (citation omitted). Accordingly, looking at the Amended Complaint, the Leahys alleged that they purchased the property based on the fact that the City had issued a decision approving the grading of the property, and that the County had approved the grading plans and was prepared to issue the grading permit. Ex. 4, ¶ 10. The Leahys allege facts from which a court could conclude that they had reasonable investment-backed expectations.

With respect to the character of the government action, courts determine whether the "interference with property can be characterized as a physical invasion by government . . . [or] . . . some public program adjusting the benefits and burdens of economic life to promote the common good." Penn Central, 438 U.S. at 124 (citation omitted). The Leahys alleged that the City "knowingly engaged in a course of conduct and have conspired and acted in concert to arbitrarily, frivolously and illegally interfere with, obstruct, impede and deprive plaintiffs of their

Page 16 - OPINION AND ORDER

rights to grade and develop their property, with no legal basis for doing so." Ex. 4, ¶ 3. The Leahys also alleged that property in the city limits is located on a thick deposit of basalt, which poses problems in commercially developing it, and that other property has been leveled and graded. Id. at ¶ 14. Substantial grading of the Leahy property is "essential to its commercial development as a community shopping center." Id. at ¶ 16. The fact that the City had once approved the grading permit is at least some indication that its revocation was not necessary to promote the common good. This conclusion is underscored by the fact that the City permitted grading on other properties.

No one factor overrides any other factor as the court is required to weigh all of the relevant circumstances in determining whether a taking occurred. Bass Enters. Prod. Co. v. United States, 381 F.3d 1360, 1366 (Fed. Cir. 2004), citing Palazzolo v. Rhode Island, 533 U.S. 606, 636 (2001) (O'Connor, J., concurring). Therefore, although a court would need additional evidence from the Leahys as to their economic deprivation, given my conclusions with respect to the other *Penn Central* factors, I find that the City could have been liable for the damages arising from its temporary revocation of the grading permit. Accordingly, I need not evaluate the Leahys' claim under the Oregon Constitution.

In conclusion, because the Leahys' damages arose out of inverse condemnation, and because the City could have been liable on this basis, Northland has no duty to indemnify.

III. Additional Arguments

Having found that the insurance exclusion applies, I need not reach the City's argument that the Leahy settlement is covered under the "any negligent act, error or omission" and under "violation of civil rights" language in the insurance policy. Similarly, I need not reach

Page 17 - OPINION AND ORDER

Northland's argument that the Leahy settlement falls under the insurance policy exclusion for "damages expected or intended."

## CONCLUSION

The City's motion for summary judgment (#48) is denied, and Northland's motion for summary judgment (#43) is granted. This case is dismissed.

IT IS SO ORDERED.

Dated this 19th day of September 2005.

Garr M. King
United States District Judge